Mercantile Ins. Co. *v.* State Ins. Co. of Pennsylvania.

a second time of the charges made by the defendant is not satisfactory evidence, under the circumstances, that the illness was caused by the report.

2dly. Still less is there evidence that the sickness of the plaintiff was caused exclusively by the defamatory reports put in circulation by the defendant.

Assuming that the reports which were in circulation did prey upon his mind, and affect his bodily health, then the reports of the same general character which were put in circulation by Fuller and others, and which came to the knowledge of the plaintiff from various sources, in the winter and spring of 1852, must necessarily be presumed to have contributed to the alleged effect. The only conclusion would be, that it was not the words spoken by the defendant, or any other single individual, that caused the sickness, but that it was caused by all combined, and by the general "speech of people." By the plaintiff's own showing the defendant did not, by the speaking of the words charged, solely, cause the special damage complained of; and for this reason, if for no other, the nonsuit was properly granted.

The judgment must be affirmed.

[Onondaga General Term, October 1, 1855. *W. F. Allen, Hubbard, Pratt* and *Bacon,* Justices.]

---

## The Mercantile Mutual Insurance Company *vs.* The State Mutual Fire and Marine Insurance Company of Pennsylvania.

The plaintiffs, having risks on the ship Great Republic, her cargo, and freight, applied to the defendants for re-insurance, by an application in these terms: "Re-insurance is wanted by the Mercantile Mutual Insurance Company for $—— on cargo on board of the ship Great Republic, at and from New York to Liverpool, on the excess of risks the applicants may have over $50,000, not to exceed $15,000." The defendants agreed to make this insurance. At the time of the loss the plaintiffs had insured less than $50,000 on the cargo

Mercantile Ins. Co. *v.* State Ins. Co. of Pennsylvania.

of the ship, but they had risks, also, on the freight, and on the ship herself; which, added to the amount they had on the cargo, amounted to over $65,000. *Held* that the application being for re-insurance on cargo alone, the engagement of the defendants was only to insure the excess of risks the plaintiffs might have on cargo alone; and that the plaintiffs not having insured the cargo to the amount of $50,000, there was no excess on which the policy of re-insurance could attach; and consequently the defendants were not liable.

*Held also*, that there was no such ambiguity on the face of the application, as to render parol evidence admissible to explain it.

*Held further*, that evidence of a *custom* of the parties, and of the port of New York, in adjusting contracts of re-insurance, upon such applications, to regard the word " excess," in the application, as applicable to the whole amount of insurance at risk in or upon the vessel; and that the premiums upon open policies had previously been adjusted and paid between the present parties, upon that principle, was properly excluded.

THIS was an action upon a policy of re-insurance. It was tried at the New York circuit, in March, 1857, before Justice PEABODY, without a jury. The following facts were found by the court. 1. That on or about the 1st of December, 1853, the plaintiff having underwritten policies of insurance upon the ship Great Republic, then lying at New York, and also open policies upon her freight and cargo, for a voyage thence to Liverpool, applied to the defendants' agent for re-insurance. The defendants' agent agreed to make the insurance, pursuant to the application. The plaintiff at the time had insurances on the ship for $20,000—$5000 of which was subsequently re-insured by the defendants, and the loss paid after the destruction of the ship ; on the freight, $15,000, and on the cargo, $50,200, making in the aggregate $65,200, and deducting the $5000 re-insurance on the ship, $60,200 of insurance upon the ship, freight and cargo. 2. After the agreement was so made and before leaving port, the ship was burned ; and a loss was sustained upon vessel, freight and cargo, which the plaintiff would be entitled to recover, if the application for insurance is to be construed as being for the excess of insurance by the plaintiff over the aggregate of insurance upon ship, freight and cargo. 3. Subsequently to the loss, the defendants delivered to the plaintiffs the policy of insurance described in the complaint, with a clause written therein, saving the rights of the defend-

ants, as follows : " This policy is executed and delivered reserving all the legal rights of the State Mutual Fire and Marine Insurance Company under the same, and under the application of date 1st December, 1853, of the Mercantile Mutual Insurance Company from which this policy is made.

New York, 6th January, 1854.

MOULTRIE & PALMER, Agents."

The evidence offered, to prove the custom of the plaintiffs and defendants, and the custom of the port of New York, in adjusting contracts of re-insurance upon such applications, to regard the word " excess" in the application as applicable to the whole amount of insurance at risk in or upon the vessel insured ; and that the premiums upon open policies had, before this policy, been repeatedly adjusted and paid between these parties in reference to excess so regarded, was objected to by the defendants, and excluded by the court.   As matter of law, the judge found, 1. That the terms of the application for insurance had reference only to the excess of insurance upon cargo above $50,000 which the plaintiffs might have insured upon the cargo, and had no reference either to the insurance of the plaintiff upon the ship or freight in connection therewith ; and 2. At the trial it was conceded that the plaintiffs had received the policy only in fulfillment of the contract to give a policy, and reserving all their rights to the matters of defense, as they stood under the original application, and subject to its provisions, no cause of action could arise upon the facts found, and the defendant was entitled to judgment.

The plaintiff excepted to the finding of the court.

*Wm. Curtis Noyes*, for the plaintiffs.

*Wm. Moultrie*, for the defendants.

PEABODY, J.   The plaintiffs, having risks on the ship Great Republic, her cargo, and freight, in 1853, applied to the defendants for re-insurance.   Their application was in writing, and in the following terms :

"Re-insurance is wanted by the Mercantile Mutual Insurance Company for $—— on cargo, on board of the ship Great Republic, at and from New York to Liverpool, ex. 50,000, not to ex. 15,000. This policy is to be subject to such risks, valuations, and conditions as are or may be taken by the Mercantile Insurance Company, and payments of loss to be made at the same time. New York, Dec. 1st, 1853."

This insurance the defendants agreed to make, and signified their engagement to do so by writing at the bottom of the paper the word "binding," and signing the memorandum thus made, " M. & P., agents State Mutual," (M. & P. being the initials of the names of the agents of the defendants, through whom the contract was made,) and to this they acknowledge themselves bound.

It appeared on the trial that the plaintiffs had insured less than $50,000 on the cargo of the ship, but that they had risks also on the freight, and on the ship herself, which, added to the amount they had on the cargo, amounted to $65,000 and more.

The question in this case is, what did the defendants insure? The meaning of the application, in several particulars in which it was ambiguous, was proved or admitted by the parties. Re-insurance was conceded to mean insurance to the plaintiffs of risks they might have, and " ex. 50,000 not to ex. 15,000," was admitted or proved to mean substantially " on the excess of risks plaintiffs might have over $50,000, not to exceed $15,000." The application was therefore in substance for insurance to the plaintiffs of such risks as they had taken or might take, over and above the sum of $50,000, the amount of such re-insurance not to exceed, in any event, the sum of $15,000. The defendants therefore engaged to insure to the plaintiffs such sums as they had insured, or should insure to others, above the sum of $50,000, until such excess should amount to $15,000, but beyond that sum they did not agree, in any case, to become liable. The insurance, by the defendants, it is also conceded, was limited to cargo, and no claim is made that they insured any thing on the ship or freight. About these matters there was no controversy. The plaintiffs, however, claim that in ascertaining

what amount of risk they had, and how much, and whether any thing over $50,000, so as to determine whether the insurance by the defendants attached, and if so, to what extent, the whole of the plaintiffs' risks on vessel, freight and cargo, are to be taken into the account, and that the insurance of the defendants attached when the plaintiffs' risks on all these together exceeded that sum. Whereas, the defendants insist that their engagement was only to insure the excess the plaintiffs might have over $50,000, on cargo *alone*, that alone being the subject of the application, and nothing else being suggested, either in terms or by implication, as the subject of the risks of the plaintiffs, in reference to the amount of which they contracted for re-insurance ; and that any insurance the plaintiffs might have made on the ship or freight is not to be taken into account in ascertaining the extent of their risk, with a view to determining what amount of insurance, if any, the defendants made.

As the defendants' contract was an undertaking to make the insurance applied for, the extent and effect of that contract must depend chiefly on the terms and meaning of the application, which thus becomes all important in the inquiry what the contract was. The part of the paper which controls in respect to this, explained as it was by evidence and admissions on the trial, reads substantially as follows : " Re-insurance is wanted by the Mercantile Mutual Insurance Company for $—— on cargo, on board of the ship Great Republic, at and from New York to Liverpool, on the excess of insurance which plaintiffs may have over $50,000, not exceeding $15,000." When the risks insured by the plaintiffs should exceed $50,000, the defendants were asked to re-insure that excess to a certain extent—that is, until it (the excess) should amount to $15,000 ; beyond which sum they were not asked to insure or become liable, however much the risks of the plaintiffs above the $50,000 might exceed that sum.

To ascertain whether the risks assumed by the plaintiffs exceeded the point at which the defendants' risks were to commence, the first step must be to decide the principal point in controversy ; that is, what kinds or classes of risks are to be

taken into account in making the calculation, and whether we
are to include the risks the plaintiffs had assumed on the ship
and freight, as well as those on the cargo, or to exclude them
and calculate only what they had assumed on the cargo.   As
above remarked, this depends entirely on the terms of the ap-
plication, which are given substantially above.   With the ex-
planations made, it amounts to an application by the plaintiffs
for re-insurance to them on cargo on board of said ship, of the
risks they should take over the $50,000, and under $65,000.
The application does not state expressly on what property the
$50,000 of risks are to be, and we are left to ascertain the
meaning of it in this respect by construction.   And first, what
does appear in the papers ?   It is plainly and confessedly an
application for re-insurance on cargo alone.   Cargo, then, is the
great subject of the application.   It is the only thing of which
re-insurance is asked.   It is mentioned in the early part of the
paper, in the same sentence in which the sum from which the
insurance is to take effect, and the amount to which it is to ex-
tend, are stated ; and there is not apparently any change from
that subject to any other, as it proceeds from the request for
re-insurance to state the point at which it is desired that the
re-insurance should commence.

We are not to infer a change from one subject to another or
others, without some necessity, or at least authority, for such
an inference.   It is much more natural that the latter part of
the sentence should refer to the same subject as the part earlier
and immediately contiguous to it does.   I see no cause to sup-
pose that the subject of the risks of the plaintiffs spoken of, is
other than the subject of which they ask the re-insurance,
nor do I see room or opportunity to supply any other subject
as being the one referred to in speaking of the risks of the
plaintiffs than that which is referred to in the earlier but
immediately contiguous part of the sentence.   The defend-
ants undertake to re-insure the plaintiffs on cargo of the
Great Republic, and to commence their re-insurance at the
point when the risks of the plaintiffs begin to exceed
$50,000.   Can these risks of the plaintiffs mean risks on any

thing else than that of which re-insurance is asked, especially when no other subject of insurance appears to have been under consideration between the parties?

If there be an ambiguity apparent on the face of this paper, parol evidence may be admitted to explain it. If the subject matter of the risks of the plaintiffs referred to, is not expressed and is not ascertainable from what is expressed in the paper, "*ex necessitate*," it must be ascertained, if at all, from other evidence than that contained in the paper, and to that end such evidence is admissible. It is only in such a case, however, that extraneous evidence is admissible, and if no such ambiguity is apparent, evidence *aliunde* to show the meaning of the parties, cannot be admitted; for to admit it would be to contravene a well settled rule of law, which forbids that such evidence should be allowed to vary the terms of a written contract. Is there such ambiguity in this paper, that the attentive reader does not perceive, or is left in serious doubt, what property is referred to as being the subject of insurance by the plaintiffs? And, first, what property is spoken of in the context? What property constitutes the theme of the writing? As we have seen, the subject of re-insurance is plainly the cargo, and nothing else. And what other thing or subject is spoken of? The freight? No, it is not named in the paper at all. The ship? No, she is not spoken of. Nothing is said of her. Her name is mentioned, to be sure, in designating the particular cargo referred to. The cargo is said to be on board of her. She is thus mentioned incidentally in describing the subject (a subject other than herself) for which re-insurance is wanted; and in no other manner, and indeed, on no other occasion throughout the paper. Re-insurance is wanted * * * * * on cargo on board the ship Great Republic * * * * on the excess of risks which the plaintiffs may have over $50,000, to an amount not exceeding $15,000.

Omitting, of the application, the parts which are unimportant to this inquiry, and supplying certain ellipses, agreed on as proper to be supplied, the paper reads substantially as above. Does the attentive reader feel doubtful as to what is intended as the subject of the plaintiffs' risks of $50,000? Does he

doubt whether the point in the plaintiffs' risks at which the defendants' re-insurance is to commence, namely, $50,000, does not mean that point in their risks on property other than is mentioned in the paper? Is he in doubt whether the ship is not the subject? or the freight? or whether the ship, freight and cargo, all three, are not meant? I am unable to perceive any reason or opportunity for such doubt, and I therefore exclude the evidence.

On the cargo alone it is admitted that the plaintiffs had not, and did not at any time have, $50,000 of insurance; and as there was no excess on which the defendants' policy could attach, they were not liable, and judgment must be for the defendants.

[New York Special Term, April 7, 1857. *Peabody*, Justice.]